Argued and submitted October 28, 1998, affirmed November 3, 1999

# Dawn C. ULRICH,
*Petitioner,*

*v.*

# SENIOR AND DISABLED SERVICES DIVISION,
*Respondent.*

## (0312-AZ0603-1; CA A98932)

989 P2d 48

Megan E. Glor argued the cause for petitioner. With her on the brief was Swanson, Thomas & Coon.

Philip Schradle, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Erika L. Hadlock, Assistant Attorney General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Petitioner seeks review of the Senior and Disabled Services Division's (SDSD) denial of her claim for benefits under the spousal pay program (program), ORS 411.803, OAR 411-030-080, arguing the denial violated Title II of the Americans with Disabilities Act (ADA), 42 USC § 12132 (1998), and the Rehabilitation Act of 1973, 29 USC § 794 (1998). We affirm.

This petition concerns SDSD's denial of petitioner's second application for spousal pay benefits. The program provides:

> "When a married recipient of public assistance * * * requires in-home care, * * * [SDSD] shall provide that such care be compensated even though provided by the spouse, in the manner and to the extent specified by rule * * * based on the extent of need and the availability of funds therefor." ORS 411.803.

Spousal pay benefits are awarded for in-home care by spouses for clients requiring "full assistance in at least four of the six activities of daily living [(ADL)], as determined by the assessment, and would require nursing facility placement without in-home services." OAR 411-030-0080(1)(a)(A). OAR 411-030-0020(14) defines "full assistance" to mean "the client is unable to do any part of an activity of daily living or task, *i.e.*, it must be done entirely by someone else."

Petitioner suffers from various mental illnesses or disorders. When her husband is not visibly present, petitioner becomes panic stricken and is unable to perform any of the ADLs. However, when her husband is visibly present, petitioner is generally able to perform those functions. On review of SDSD's denial of petitioner's first application for benefits, we found plausible SDSD's interpretation of its rule that "full assistance" required husband to "actually perform [ ] at least four of the six activities of daily living" and that his "facilitation [of those tasks] is not performance." *Ulrich v. Senior and Disabled Services Div.*, 142 Or App 290, 297, 921 P2d 982, *rev den* 324 Or 323 (1996). Thus, petitioner did not meet the eligibility criteria for the program, because full

assistance requires the physical assistance of husband to entirely perform at least four of the six ADLs.

■ ■ The facts are undisputed, and petitioner does not here challenge SDSD's finding that she does not meet the eligibility requirements of the program because she does not require full assistance in four of the six ADLs. Petitioner argues that the program's criteria, specifically the "full assistance" criterion, violate the ADA and Rehabilitation Act, because the criteria tend to screen out individuals with mental disabilities. We review SDSD's determination that its denial of petitioner's claim did not violate the ADA and Rehabilitation Act for errors of law. ORS 183.482(8)(a). We address the ADA claim first.

The ADA provides:

"Subject to the provisions of this subchapter, no *qualified individual with a disability* shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC § 12132 (emphasis added).

The ADA defines "qualified individual with a disability" as

"an individual with a disability who, with or without reasonable modification to rules, policies, or practices, * * * meets the *essential eligibility requirements* for the receipt of services or the participation in programs or activities provided by a public entity." 42 USC § 12131(2) (1998) (emphasis added).

It is undisputed that petitioner is an individual with a disability. However, to prove a violation of the ADA, petitioner must also prove she is a *qualified* individual with a disability and that the denial of benefits "*was by reason of [her] disability*." *Weinrich v. Los Angeles County,* 114 F3d 976, 978 (9th Cir), *cert den* 522 US 971, 118 S Ct 423 (1997) (emphasis in original).

■ To determine if petitioner is an otherwise "qualified individual with a disability," we must examine whether she meets the "essential eligibility requirements" of the program. The purpose of the program is to provide " 'a means for the spouse to act as a substitute care provider and thereby [for

clients] to avoid the need for nursing home care.' " *Ulrich*, 142 Or App at 296 (quoting Edmonds, J., dissenting, *id.* at 300). SDSD argues that its reading of "full assistance," meaning full physical assistance by husband, is an essential eligibility requirement for the program. We, however, are compelled to look beyond the stated criteria of the program to avoid that tautology, which would render Title II of the ADA meaningless.

Rather, we examine the "essential nature of the program" and assess what criteria are necessary to implement its purpose. *Easley by Easley v. Snider,* 36 F3d 297, 300 (3rd Cir 1994). These essential criteria include: a disability, a physical inability to complete any portion of four of the six ADLs without assistance, and the need for nursing home care without the in-home care of the spouse. SDSD argues that the type of care provided to the individual, *i.e.,* physical performance of the ADLs and not psychological facilitation of them, is also an essential eligibility requirement. We do not agree. In reviewing the importance of the requirement to the program, we do not believe that providing physical assistance is necessary to fulfilling the program's aim of enabling spousal in-home treatment for severely disabled persons and thereby avoiding institutional care. *See Pottgen v. Missouri St. High Sch. Activities Ass'n,* 40 F3d 926, 930 (8th Cir 1994) (examining the importance of a requirement to the program in determining whether that requirement was an essential eligibility requirement of the program). This is not a situation as in *Easley,* where Pennsylvania's Attendant Care Program sought to provide persons with a level of independence "greater than one which does nothing more than keep and sustain persons out of institutions." 36 F3d at 303. There, a distinction between mental and physical disabilities was essential to enabling a higher level of independence. Here, no such distinction is essential to enabling spousal in-home care. We conclude that petitioner is an otherwise "qualified individual with a disability," because without assistance petitioner cannot physically perform any part of the six ADLs.

■     However, petitioner's denial of benefits was not "by reason of her disability." The ADA is meant " 'to address discrimination in relation to nondisabled persons, rather than to eliminate all differences in levels or proportions of resources

allocated and services provided to individuals with differing types of disabilities.' " *Bailey v. Reynolds Metals,* 153 Or App 498, 503, 959 P2d 84, *rev den* 327 Or 432 (1998) (quoting *Williams v. Secretary of the Exec. Office of Human Serv.*, 414 Mass 551, 559, 609 NE2d 447, 454 (1993)).

Here, the rule is facially neutral. While SDSD's interpretation of the rule does screen out psychological assistance that facilitates the physical completion of ADLs by the client, it does not screen out mentally disabled patients. The agency's interpretation merely requires that their disabilities render them incapable of physically performing ADLs and, further, that they require physical assistance to fully complete the tasks. As SDSD points out, there are many mentally disabled persons who remain unable to physically perform ADLs with their spouses present, and those persons would be eligible for the program. Indeed, the reason that petitioner is treated differently is not because of her disability but because of the relationship between her inability to perform ADLs and the type of care necessary for their performance. *Bailey,* 153 Or App at 504.

■ The ADA does not require "that all disabled persons have *identical* access to benefits * * * or prohibit meaningful distinctions between different groups of disabled persons," but it does require meaningful access to benefits, with nonprejudicial treatment based upon reasonable factors. *Id.* at 502-03 (emphasis in original). *See also Harding v. Winn-Dixie Stores, Inc.*, 907 F Supp 386, 390 (MD Fla 1995). "[T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate,* 469 US 287, 301, 105 S Ct 712, 83 L Ed 2d 661 (1985).

Petitioner's argument, then, reduces to a "disparate impact" case. However, petitioner has not established how SDSD's interpretation of its rule has such a disparate impact as to deny mentally disabled persons "meaningful access" to the program. *See Hunsaker v. Contra Costa County,* 149 F3d 1041, 1043 (9th Cir 1998) (disparate impact discrimination is actionable only if it denies "meaningful access" to public benefits). As stated above, mentally disabled persons are as eligible for the program as persons who are not mentally disabled. Petitioner points to her own "unique" circumstances as

proof that the program "tend[s] to screen out" mentally disabled individuals. 28 CFR § 35.130(b)(8) (1999). However, that rule does not "eliminate the need to show a denial of meaningful access * * * in disparate impact cases." *Hunsaker,* 149 F3d at 1043. We empathize with petitioner's unfortunate situation, but we cannot say that it demonstrates an exclusion of mentally disabled patients, rendering the petitioner's access to the program unmeaningful.

That conclusion is also founded on the context of the program itself. As in *Does 1-5 v. Chandler,* 83 F3d 1150, 1155 (9th Cir 1996), it is undisputed that Oregon is not required to have the spousal pay program at all. In providing the benefit, the program may recognize "meaningful distinctions between different groups of disabled persons." *Bailey,* 153 Or App at 502. Oregon's program recognizes the difference between persons who are physically incapable of performing ADLs under anyone's care and those who are capable under a spouse's care. It thus recognizes the type of care that the spouse must remain at home to provide. Being "visibly present" and "actually performing" an ADL are two qualitatively different activities. In enacting the benefit program, the legislature focused on compensating spouses for the care they provide as the mechanism to enable in-home care and avoid institutional care. *See* ORS 411.803. Thus, it is reasonable for SDSD to focus implementation of its compensation program on the type of care a spouse is required to provide.

While the type of care the spouse provides is not "essential" to achieving the purpose of the program, it is a reasonable basis on which to measure the benefits of the program. Because that focus is not prejudicial and does not deny mentally disabled persons "meaningful access" to the program, SDSD's interpretation does not violate Title II of the ADA. *See Alexander,* 469 US at 301.

Petitioner urges that "for the same reasons that [SDSD] has discriminated against [petitioner] under Title II of the ADA, it has discriminated against her under the [Rehabilitation Act]." The analysis under the Rehabilitation Act is similar to that under Title II of the ADA. *See Weinreich,* 114 F3d at 978. Thus, for the same reasons that

we reject petitioner's ADA argument, we reject her Rehabilitation Act argument.

Affirmed.