83 F.3d 1150
 64 USLW 2735, 5 A.D. Cases 849, 15
A.D.D. 640, 8 NDLR P 78,
96 Cal. Daily Op. Serv. 3466
 John DOES 1-5, individually and on behalf of all others
similarly situated; Jane Doe, individually and on
behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
Susan M. CHANDLER, Ph.D., Director of the Department of
Human Services, a duly organized and recognized agency of
the State of Hawaii; Patricia Murakami, Acting
Administrator, Family & Adult Services Division, Defendants-Appellees.
 No. 95-17245.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1996.
Decided May 17, 1996.
 
 1
 Stanley E. Levin, Honolulu, Hawaii and Michael K. Livingston, Honolulu, Hawaii, for plaintiffs-appellants.
 
 
 2
 G. Cher Foerster, Office of the Attorney General, Honolulu, Hawaii, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Hawaii; Helen Gillmor, District Judge, Presiding. D.C. No. CV 95-498-HG.
 
 
 4
 Before BROWNING and NOONAN, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 MERHIGE, Senior District Judge:
 
 5
 This case arises out of a class action lawsuit brought by Appellants, John Does 1-5 and Jane Doe, individually and on behalf of others similarly situated. Appellees are Susan M. Chandler, Director of the Hawaii Department of Human Services, and Patricia Murakami, Acting Administrator, Family and Adult Services Division.
 
 
 6
 HRS § 346-71 is the principal statutory mandate for Hawaii's General Assistance ("GA") Program. HRS § 346-71 was amended in 1995 by Act 166 of the Hawaii legislature. Appellants filed suit in the United States District Court for the District of Hawaii on June 21, 1995, alleging that Act 166 violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and its implementing regulations, 28 C.F.R. § 35.130, as well as the Equal Protection and Due Process Clauses of the United States Constitution.
 
 
 7
 Appellants appeal the district court's denial of their motion for a preliminary injunction to enjoin enforcement of Act 166.
 
 I.
 
 8
 Prior to 1995, HRS § 346-71, Hawaii's applicable GA statute, provided GA benefits to those persons with dependent children, able-bodied persons at least 55 years of age, and disabled persons who were unable to provide sufficient support for themselves and who were not otherwise provided for under Hawaii law or eligible for federal assistance. In 1995, the Hawaii legislature passed Act 166 amending HRS § 346-71. Act 166 has the effect of eliminating GA as an entitlement and eliminating benefits for certain persons who had previously received them.
 
 
 9
 Act 166 eliminated benefits to those able-bodied persons who had been entitled to GA because they were at least 55 years old. Act 166 also limited the receipt of benefits to those who had been entitled to GA by reason of their disability to no more than one year.[1] Thus, after Act 166 the Hawaii GA program provides durationally unlimited benefits to persons with dependent children who are unable to provide sufficient support for themselves and who are not otherwise provided for under Hawaii law or eligible for federal assistance and benefits of up to a duration of one year to disabled persons unable to provide sufficient support for themselves and who are not otherwise provided for under Hawaii law or eligible for federal assistance.
 
 
 10
 The amendments to HRS § 346-71 contained in Act 166 became effective on July 1, 1995. Thus, if Act 166 is not found to violate federal law, persons who receive GA by reason of their disabilities will begin to be terminated from the program when their eligibility elapses a year from that date.
 
 
 11
 Appellants filed suit in the United States District Court for the District of Hawaii on June 21, 1995, alleging that Act 166 violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and its implementing regulations, 28 C.F.R. § 35.130, as well as the Equal Protection and Due Process Clauses of the United States Constitution. The Appellees have stipulated and the district court ordered that the Appellants-plaintiff class consists of "[a]ll persons who are, have been, or will be identified as "disabled" under Chapter 346 and its implementing regulations and who will be adversely affected by the implementation of Act 166." Shortly after filing suit, Appellants brought a motion for a preliminary injunction in the district court, seeking to enjoin the enforcement of HRS § 346-71, as amended. The district court denied this motion on November 13, 1995, determining that Appellants had failed to raise a "serious question" as to the validity of HRS 346-71, as amended.
 
 II.
 
 12
 A district court's order regarding preliminary injunctive relief is subject to limited review. The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Miller v. California Pacific Medical Center, 19 F.3d 449, 455 (9th Cir.1994)(en banc).
 
 
 13
 A trial court's decision to deny injunctive relief should be upheld unless the court incorrectly applied the law, relied on clearly erroneous factual findings, or otherwise abused its discretion. Contract Services Network, Inc. v. Aubry, 62 F.3d 294, 297 (9th Cir.1995). Although district courts have wide discretion in issuing preliminary injunctions, "where the district court is alleged to have relied on erroneous legal premises, review is plenary." Miller, 19 F.3d at 455. Thus, issues of law underlying the decision are reviewed de novo. Id.
 
 
 14
 A. Does Act 166 violate Title II of the ADA?
 
 
 15
 Title II of the ADA provides that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.
 
 
 16
 Title II of the ADA is expressly modeled after Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794. See 42 U.S.C. § 12134(b). Title II of the ADA incorporates the "nondiscrimination principles" of Section 504 and extends them to state and local government without regard to the receipt of federal financial assistance. Easley v. Snider, 36 F.3d 297, 300-301 (3rd Cir.1994), rehearing and rehearing en banc denied; Vaughn v. Sullivan, 906 F.Supp. 466, 473, n. 11 (S.D.Ind.1995). There is very little case law interpreting Title II of the ADA. However, cases interpreting the Rehabilitation Act are instructive in interpreting Title II of the ADA. See Easley, 36 F.3d at 300-302.
 
 
 17
 Title II's definition of "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). DHS, as an agency of the State of Hawaii, is a "public entity." A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).
 
 
 18
 Congress has explicitly authorized the Attorney General to promulgate regulations under the ADA. 42 U.S.C. § 12134(a). Thus, these regulations must be given "legislative and hence controlling weight unless they are arbitrary, capricious, or clearly contrary to the statute." See United States v. Morton, 467 U.S. 822, 834, 104 S.Ct. 2769, 2776, 81 L.Ed.2d 680 (1984). The regulations state, in pertinent part:
 
 
 19
 (a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.
 
 
 20
 (b)(1) A public entity, in providing any aid, benefit or service, may not, directly, or through contractual, licensing, or other arrangements, on the basis of a disability--
 
 
 21
 (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service;
 
 
 22
 (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others;
 
 
 23
 (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others;
 
 
 24
 (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;
 
 
 25
 ...
 
 
 26
 (vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.
 
 
 27
 ....
 
 
 28
 (3) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:
 
 
 29
 ...
 
 
 30
 (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities;
 
 
 31
 ....
 
 
 32
 (8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program or activity, unless such criteria can be shown to be necessary for the provision of the service, program or activity being offered.
 
 
 33
 28 C.F.R. § 35.130.
 
 
 34
 The district court determined that in Act 166 "the factor distinguishing the eligible persons entitled to uncapped GA benefits from the eligible persons entitled to capped GA benefits is not one of disability, but rather one of having dependent children." In light of this finding the district court concluded that there was no plausible basis for arguing that Act 166 violated Title II of the ADA because the ADA does not address discrimination against disabled persons for reasons unrelated to their disabilities. The district court also concluded that there was no plausible argument that Act 166 violated either the equal protection clause or the due process clause because the stated objective of Hawaii in providing for the most needy is legitimate and because the prioritization of persons with dependent children is rationally related to this interest.
 
 
 35
 The Appellants' argument that Act 166 violates Title II of the ADA runs as follows: (1) Hawaii's GA program is one program with the single purpose of providing public assistance to those who are unable to provide sufficient support for themselves or those dependent upon them and who are ineligible for federally funded assistance programs; (2) Appellants are "qualified individuals with disabilities" with respect to participation in the GA program because by virtue of their need and ineligibility for federal support the Appellants "meet[ ] the essential eligibility requirements for the ... participation in" the GA program provided the GA program provided by DHS; (3) Act 166 places a durational limit on GA benefits provided to the needy eligible disabled and no durational limit on benefits provided to the needy eligible persons with children in the home; (4) there is no logical or empirical support for the conclusion that eligible persons with dependent children at home are more needy than eligible disabled persons; (5) the difference in Act 166 between the treatment of the needy disabled and that of the needy persons with dependent children is not "necessary" to the "essential nature" of the GA program and, indeed, is entirely irrational; (6) Act 166, therefore, violates Title II and the implementing regulations on its face.
 
 
 36
 The Appellees argue in support of the decision of the district court that Hawaii has a compelling interest, as parens patriae, in protecting the welfare of its children. According to the Appellees, children are "legally needy" and the provision of benefits to them is in no way comparable to the provision of benefits to the disabled. The Appellees assert that the provision of GA benefits to needy households with dependent children is, in substantive function, entirely independent of the provision of GA benefits to needy disabled. Nor, according to the Appellees, does the ADA, the equal protection clause, or the due process clause mandate that Hawaii provide equivalent benefits to the disabled as it may choose to independently provide to families with dependent children.
 
 
 37
 Appellants rely heavily on the decision of the United States District Court for the Southern District of Florida in Concerned Parents to Save Dreher Park Center v. City of West Palm Beach, 846 F.Supp. 986 (S.D.Fla.1994). In this decision the court held that it was a violation of Title II of the ADA for the City of West Palm Beach to shut down a recreational facility for the disabled. The district court applied a three element test to the claim for violation of Title II requiring a plaintiff to show: (1) that he is, or represents the interests of, a "qualified individual with a disability"; (2) that such individual was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Id. at 989-990. This test appears modeled on the elements required by courts in a cause of action under § 505 of the Rehabilitation Act of 1973. See Sandison v. Michigan High School Athletic Association, Inc., 64 F.3d 1026, 1030-1031 (6th Cir.1995).
 
 
 38
 The Concerned Parents Court reasoned, first, that the disabled plaintiffs were clearly "qualified individuals with disabilities" because they met the only "essential eligibility requirement" of the City's recreational program by requesting the benefits of a recreational program. Id. at 990. Second, the court concluded that the elimination of the Dreher Park program effectively denied the disabled the benefits of the City's recreational programs. Id. at 991. Lastly, the Court reasoned that, "while Title II does not require any particular level of services for persons with disabilities in an absolute sense, it does require that any benefits provided to non-disabled persons be equally made available for disabled persons." Id. at 992. The Court found that the City had been unable to provide any legitimate explanation for the extreme disparity between the budget cuts in recreation programs for the disabled and the non-disabled and that there was accordingly "strong evidence that the denial of the benefits of recreation was by reason of Plaintiffs' disabilities." Id.
 
 
 39
 The Appellants state that it is "undisputed" that they are "qualified persons with disabilities." They assert that the "essential nature" of the GA program is to "serve the most needy" and that they meet the "essential eligibility requirement" for participation in the GA program due to their need. The Appellants further assert that, as in Concerned Parents, the Appellees have provided no legitimate explanation for the extreme disparity between the budget cuts for GA to the disabled and those for GA to the households with dependent children. This disparity, instead of across the board cuts, according to Appellants, plainly evidences a denial of benefits "based on disability" and does violence to the very purpose of the GA program to provide for the most needy.
 
 
 40
 We disagree with Appellants' conclusion that Act 166 denies benefits based on disability. It is undisputed that Hawaii is not required to have a GA program at all. It also is clear that Hawaii may have a benefit program aimed only at families with dependent children. Such a program would not violate the ADA as long as disabled people with children were not excluded from full participation in the program. In such a situation the disabled without children would not meet the "essential eligibility requirement" for participation in the program--having dependent children. Such a case would be akin to that decided by the Sixth Circuit in Sandison v. Michigan High School Athletic Association, Inc., 64 F.3d 1026 (6th Cir.1995).
 
 
 41
 In Sandison the Sixth Circuit held that a rule making 19-year-olds ineligible to compete in high school sports did not violate either the Rehabilitation Act or the ADA with respect to learning disabled 19-year-olds who had been kept back in school. Id. The Sandison Court stated that "a plaintiff proceeding under Title II of the ADA must, similar to a Section 504 plaintiff, prove that the exclusion from participation in the program was 'solely by reason of disability'." Id. at 1036-37. The Court concluded that the plaintiffs had been barred from participation in high school athletics by reason of their age, not their disability. Id. Furthermore, the Court concluded that the age requirement was an "essential eligibility requirement" within the meaning of 42 U.S.C. § 12131(2). Id. See also, Easley, 36 F.3d 297 (holding that the ADA was not violated with respect to mentally non-alert disabled persons by requirement that patients be mentally alert in order to participate in state attendant care program because mental alertness is part of the "essential nature" of the program).
 
 
 42
 The key issue in this case, therefore, is one of characterization. The Court concludes that the Hawaii GA program is, functionally, made up of a program of support for needy families and a separate program of support for the needy disabled. The ADA does not require equivalent benefits in different programs.
 
 
 43
 Although Appellants argue that the Hawaii GA program is essentially a single, unified program with the single essential purpose of providing income support for the needy, we conclude otherwise. The Hawaii GA program does not provide benefits to all needy residents who cannot receive federal aid--only those who are disabled or who have dependent children. Non-disabled needy without dependent children are not entitled to receive any funds. This restriction cuts against viewing the program as having the unified purpose of providing for the needy as opposed to viewing it, functionally if not formally, as two discrete forms of benefit providing for two discrete subgroups of the needy population.
 
 
 44
 B. Does Act 166 Violate the Equal Protection Clause or the Due Process Clause?
 
 
 45
 For the purposes of equal protection analysis, the disabled do not constitute a suspect class. Welsh v. City of Tulsa, 977 F.2d 1415, 1420 (10th Cir.1992). Nor is there a fundamental right to receive General Assistance benefits. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Review under the equal protection clause is therefore limited to determining whether Act 166 is rationally related to legitimate legislative goals. See City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This same review suffices to determine whether Act 166 violates the due process clause. See Weinberger v. Salfi, 422 U.S. 749, 770, 95 S.Ct. 2457, 2469, 45 L.Ed.2d 522 (1975).
 
 
 46
 The Appellees assert that the legitimate state interest furthered by Act 166 is the "preservation of the fiscal integrity of the GA program while providing benefits to the greatest number and the most needy." It is undisputed that this objective is a legitimate state interest.
 
 
 47
 Appellants attack Act 166 on the ground that the one year durational limit on benefits to the disabled bears no rational relationship to the stated purpose of providing for the most needy. Appellants urge that there is no logical or empirical basis for the conclusion that persons with dependent children are more needy than the disabled.
 
 
 48
 The Court has concluded that the GA program at issue is, in substance if not form, two discrete forms of benefit. There is a rational relationship between the goal of providing for the needy disabled and the provision of a year's worth of benefits. There is also a rational relationship between the different goal of providing for needy households with dependent children and the provision of benefits of unlimited duration. Thus, HRS § 346-71, as amended, does not violate the Equal Protection or Due Process Clauses of the United States Constitution.
 
 III.
 
 49
 The Court AFFIRMS the district court's denial of the motion for a preliminary injunction because HRS § 346-71, as amended, violates neither Title II of the ADA nor the Equal Protection and Due Process Clauses of the United States Constitution.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Act 166 also created a sub-class of disabled people--those disabled with a primary diagnosis of substance abuse. Act 166 limited the receipt of GA benefits to this class to no more than six months. This legal distinction between the disabled generally and those disabled with a primary diagnosis of substance abuse is not relevant on this appeal because the Appellees in this case have stipulated to a permanent injunction invalidating the statutory provision placing a six month durational limit on GA eligibility for disabled persons with a primary diagnosis of substance abuse. Thus, the Appellants represent the entire class of disabled persons who are negatively affected by Act 166