**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DARRYL BROWN; MARTIN V.
WHITFIELD,
   *Plaintiffs-Appellants,*

    v.

CITY OF LOS ANGELES, a municipal
corporation organized under the
laws of the State of California,
   *Defendant-Appellee.*

No. 06-55699

D.C. No.
CV-06-00316-SVW

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
February 6, 2008—Pasadena, California

Filed April 10, 2008

Before: Cynthia Holcomb Hall, Susan P. Graber, and
Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion

3783

## COUNSEL

Jerome Zamos, Zamos & Okojie, Woodland Hills, California, for the plaintiffs-appellants.

Paul L. Winnemore, Deputy City Attorney, Los Angeles, California, for the defendant-appellee.

## OPINION

PER CURIAM:

### I.

Plaintiffs Darryl Brown and Martin Whitfield were injured in the line of duty as officers of the City of Los Angeles

Police Department ("LAPD"). They both applied for benefits under LAPD's disability retirement pension, which contains an offset: disability pension payments are reduced by the amount of any worker's compensation award the officer receives for the disabling injury. Plaintiffs claim that the off-set amounts to disability discrimination. They sued the City in state court, alleging violations of (1) Title II of the Americans with Disabilities Act of 1990 ("ADA"), (2) California's Fair Employment and Housing Act ("FEHA"), and (3) 42 U.S.C. § 1983. After the City removed the case to federal court, the district court granted its motion for summary judgment and denied Plaintiffs' cross-motion. Plaintiffs timely appealed. We affirm.

## II.

The following facts are undisputed. The City provides two distinct retirement pension plans for police officers: a service pension and a disability pension. The service pension is based on length of service and age, while the disability pension is available only to officers who have sustained a work-related injury and whom the LAPD cannot reasonably accommodate in employment. The two pensions are also funded differently. Service pensions are funded in part by employee contributions, but disability pensions are funded exclusively by City contributions and investment returns. Officers disabled after on-the-job injuries and eligible for a service pension can choose either pension.

No offset results if the injured officer elects the service pension. However, if an injured officer chooses the disability pension, the City reduces the payments by the amount of any worker's compensation award the officer receives for the disabling injury. *See* Los Angeles City Charter § 1212(b), (d). The City adopted this offset to prevent what it characterizes as "double payment" for a disabling work-related injury. The City also believes that the offset is needed to preserve the tax-exempt status of the pension payments.

In May 1997, Whitfield applied for a disability retirement pension based on an injury he sustained in the line of duty. On his application, Whitfield certified that his injury left him incapable of performing his duties as an LAPD officer. LAPD agreed it could not accommodate Whitfield's medical restrictions, and in April 1998, his application was granted. Whitfield's disability pension payments were offset by the amount of a worker's compensation award he received until February 2004, when the offset ended.

Like Whitfield, Brown also applied for the disability pension and certified that his injury left him incapable of working for LAPD. In January 2006, LAPD determined it could not accommodate Brown's restrictions, but as of April 2006, no determination had been made on Brown's application for benefits. The record does not indicate whether a determination has yet been made.[1]

III.

*A.*

We review de novo the district court's decision on cross-motions for summary judgment, applying the same standard used by the district court. *Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003); *Arakaki v. Hawaii*, 314 F.3d 1091, 1094 (9th Cir. 2002). We must determine whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

---

[1]The uncertain status of Brown's application suggests that he may lack standing to challenge the offset in the pension program, as it is unclear whether it has injured him. We need not address this question, however. Whitfield clearly has standing, and the presence in a suit of even one party with standing suffices to make a claim justiciable. *E.g.*, *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In this case, Plaintiffs have pointed to no disputed issues of fact, so our task simply is to determine whether the district court erred in concluding that the City is entitled to judgment as a matter of law. As discussed below, we find no error.

*B.*

Plaintiffs' claims are for discrimination in the provision of post-employment fringe benefits available to LAPD officers. We have previously held that ADA claims concerning employment discrimination may not be asserted under Title II, which covers government entities, but lie only under Title I, which covers employers. *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1178 (9th Cir. 1999).[2] Plaintiffs attempt to distinguish *Zimmerman* because in that case, the employment claims were for discrimination in hiring, not pensions. Plaintiffs essentially argue that, unlike jobs themselves, post-employment benefits are conceptually identical to "public services" when they are provided by a government employer, and therefore that their claims are cognizable under Title II notwithstanding *Zimmerman*.

**[1]** We need not determine whether *Zimmerman* bars Plaintiffs' Title II claim because it would fail on the merits in any event. To prevail on the Title II claim, Plaintiffs must, among other things, show that the City's offset policy discriminates "by reason of" their disabilities. 42 U.S.C. § 12132; *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam).[3] They cannot do so.

___

[2]Plaintiffs concede that any Title I claim would fail because they are not "qualified individuals" who are entitled to sue for employment discrimination, as they are unable to perform the "essential functions" of their jobs. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108-09 (9th Cir. 2000); 42 U.S.C. § 12111(8).

[3]A Title II plaintiff must also show that she (1) is an individual with a disability; (2) is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; and (3) was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity. 42 U.S.C. § 12132; *Thompson*, 295 F.3d at 895.

**[2]** We rejected a similar Title II claim in *Does 1-5 v. Chandler*, 83 F.3d 1150 (9th Cir. 1996), which we find instructive, if not controlling. In *Chandler*, the plaintiffs challenged a provision of Hawaii's general assistance program, which limited benefits to one year for disabled people while providing durationally-unlimited benefits to people with dependent children. *Id.* at 1152. The plaintiffs argued that the durational limitation amounted to disability discrimination because it meant Hawaii provided fewer benefits to people with disabilities without any showing that they needed less aid than eligible people with dependent children. *Id.* at 1154. We disagreed. Under Hawaii law, individuals with disabilities remained eligible for durationally-unlimited benefits if they had dependent children. So, rather than providing a unified program that favored people without disabilities, we viewed Hawaii as providing two forms of benefits, each of which was open to disabled people who otherwise qualified. *See id.* Accordingly, the disparity in benefits between the two programs did not violate Title II because "[t]he ADA does not require equivalent benefits in different programs." *Id.* at 1155.

**[3]** The City's police pensions here are similarly non-discriminatory. In addition to the disability retirement pension, the City also provides the seniority-based service pension, which is not subject to any offset for worker's compensation, and which is clearly distinct from the disability pension program as evidenced by the different funding mechanisms. Officers who qualify for disability pensions may elect to receive service pensions if they are eligible. So, like the general assistance program in *Chandler*, the City provides two separate pension programs to officers with disabilities. The two programs need not provide identical benefits.

**[4]** Moreover, the limitation on the disability pensions — the offset for worker's compensation payments — does not discriminate "by reason of" disability. 42 U.S.C. § 12132. The offset does not treat disabled officers differently or create disproportionate burdens because of the nature of their limita-

tions or even their status as individuals with disabilities. It simply limits a type of compensation for work-related injuries that happens to be available only to individuals who are disabled. Most importantly, the limitation merely pertains to the *cause* of the injury — that is, whether it was sufficiently work-related that the officer receives worker's compensation. This is not discrimination "by reason of" disability. *Cf. Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004) ("state action that disproportionately burdens the disabled *because of their unique needs* remains actionable under [Title II]" (emphasis added)).

Plaintiffs cite no authority to the contrary. Indeed, in the case upon which they rely most heavily, one of our sister circuits held that "[t]he ADA requires only that persons with disabilities have the opportunity to receive the same benefits as non-disabled officers who have given an equivalent amount of service." *Castellano v. City of New York*, 142 F.3d 58, 70 (2d Cir. 1998) (reviewing a similar claim for pension benefits under Title I). As we explained above, the City's pension scheme meets this requirement.

**[5]** Therefore, even assuming it is not barred by *Zimmerman*, Plaintiffs' Title II claim would fail on the merits. Similarly, the FEHA claim fails because Plaintiffs have not met their prima facie burden to show an adverse action "because of" their disabilities. *E.g.*, *Faust v. Cal. Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Ct. App. 2007). And Plaintiffs have waived their § 1983 claim by failing adequately to raise it in their opening brief. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003).

## IV.

The decision of the district court is AFFIRMED.