1997-NMSC-039

945 P.2d 70

**Jennifer WEAVER, Kate Garcia, Rudolfo Martinez, Chris Luna, Patrick O'Rourke, and Chad Boutte, Plaintiffs–Appellees,**

v.

**NEW MEXICO HUMAN SERVICES DEPARTMENT, Defendant–Appellant.**

**No. 23761.**

Supreme Court of New Mexico.

Aug. 6, 1997.

706

New Mexico Human Services Department, Charles J. Milligan, Jr., Frank A. Murray, Debra S. Martinez, David L. Dayog, Santa Fe, for Defendant–Appellant.

Protection and Advocacy Systems, Nancy Koenigsberg, V. Colleen Miller, Greg Trapp, New Mexico Center on Law and Poverty, Robert C. Ericson, Albuquerque, for Plaintiffs–Appellees.

## OPINION

BACA, Justice.

1. Defendant–Appellant, the New Mexico Human Services Department (HSD), appeals a district court Order granting summary judgment in favor of Plaintiffs–Appellees on a claim brought under the Americans with Disabilities Act (the ADA). The Order invalidated an HSD regulation which imposed a twelve-month maximum period of eligibility for disabled adults receiving benefits under the General Assistance Program. The district court held that the regulation violated Title II of the ADA. HSD appealed that Order to this Court, raising the following issues: (1) whether New Mexico case law has already addressed the question of HSD's au-

thority to place durational time restrictions on disabled individuals' eligibility for General Assistance benefits; (2) whether there is a factual dispute as to Plaintiffs' eligibility for the protections afforded by Title II of the ADA; (3) whether there is a factual dispute as to HSD's qualification as a public entity governed by Title II of the ADA; and (4) whether, as a matter of law, the contested HSD regulation violates Title II of the ADA.

2. We note that state courts are not precluded from hearing matters involving alleged violations of the ADA. *See* 42 U.S.C. § 12202 (1990) (recognizing that states are not immune from claims under the ADA brought in state or federal court); *see also Cole v. Staff Temps,* 554 N.W.2d 699, 702 (Iowa 1996) (recognizing state court authority to hear ADA claims); *Lillback v. Metropolitan Life Ins. Co.,* 94 Ohio App.3d 100, 640 N.E.2d 250, 258 (1994) (recognizing that nothing in ADA divests state courts of jurisdiction to hear ADA claims); *New Jersey Citizen Action v. Riviera Motel Corp.,* 296 N.J.Super. 402, 686 A.2d 1265 (1997) (recognizing existence of concurrent jurisdiction in state and federal courts when claims are brought under the ADA). This Court has jurisdiction to review the district court Order pursuant to the New Mexico Constitution, Article VI, Section 3 (jurisdiction in quo warranto).

3. We begin our analysis of the issues raised on appeal by disposing of HSD's argument that existing New Mexico case law is dispositive of this appeal. Then we determine that the ADA applies to the contested HSD regulation, based on our conclusions that Plaintiffs are qualified individuals with disabilities under Title II of the ADA, and HSD is a public entity governed by the ADA. Next we assess whether the regulation restricts Plaintiffs' participation in the General Assistance Program on the basis of their disabilities in violation of the ADA. We conclude that the regulation discriminates against Plaintiffs on the basis of their disabilities in violation of Title II of the ADA, and affirm the Order invalidating the HSD regulation which imposed a twelve-month maximum period of eligibility for disabled adults

receiving benefits under the General Assistance Program.

### I.

4. HSD is the state agency responsible for the administration of all welfare activities in New Mexico. *See* NMSA 1978, § 27–1–3 (1987). One welfare activity administered by HSD is the General Assistance Program. *See* NMSA 1978, § 27–2–7 (1973). This program provides financial assistance:

> 1) to permanently disabled adults with no minor dependents who are not eligible for [Social Security Income (SSI)] because their disability is not severe enough;
>
> 2) [to] temporarily disabled adults with no minor dependents;
>
> 3) on behalf of children under 18 years of age who would be eligible for [Aid to Families with Dependant Children (AFDC)] except that they are not living with a person within the specified degree of relationship....

8 NMAC 3.010.21 (1996).

5. In response to budgetary shortfalls for fiscal year 1996, and pursuant to the regulatory authority provided in Section 27–1–3(D), HSD promulgated Financial Assistance Program Rule 419, 8 NMAC 3.419 (1995) (hereinafter "FAP–419"). FAP–419 restricts the period of time during which disabled adults may receive General Assistance benefits. The regulation provides that "[a] grant made to an individual eligible for GA due to disability is limited to no more than 12 months...." 8 NMAC 3.419.22. HSD did not impose a twelve-month time limit on General Assistance benefits for dependent children. *See* 8 NMAC 3.419.21.

6. Plaintiffs–Appellees are disabled recipients of General Assistance benefits. Plaintiffs have already received General Assistance benefits for at least 12 months and would no longer be eligible for General Assistance benefits if FAP–419 were implemented.

7. Plaintiffs challenged the validity of FAP–419 in district court, contending that it violated Title II of the ADA. Title II of the ADA provides in pertinent part that:

> [N]o qualified individual with a disability shall, by reason of such disability, be ex-cluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (1992). Plaintiffs asserted that HSD is a public entity which implemented FAP–419 to restrict disabled adults, by reason of their disability, from receiving the benefits of the General Assistance Program, in violation of section 12132. HSD disagreed, contending that the time limitations of FAP–419 were motivated by budgetary considerations rather than disability, and noting authority to modify the General Assistance Program under Section 27–2–7(A)(3).

8. Plaintiffs filed a Motion for Summary Judgment, alleging that they had shown that there were no factual questions remaining as to each element of their ADA claim. Plaintiffs established that they were qualified individuals with disabilities, that they would be denied the benefits of a public entity's services through implementation of FAP–419, and that the denial would be by reason of their disabilities. *See Tyler v. City of Manhattan,* 857 F.Supp. 800, 817 (D.Kan.1994). The district court agreed that the HSD regulation violated Title II of the ADA as a matter of law, and granted the Motion for Summary Judgment. HSD then filed for a stay of judgment pending appeal. A stay was granted and this appeal followed.

### II.

9. At the outset we dispose of HSD's argument that existing New Mexico case law is dispositive of the instant appeal. HSD first cites *Health & Social Servs. Dep't v. Garcia,* 88 N.M. 640, 644, 545 P.2d 1018, 1022 (1976), for the proposition that HSD has the authority to place the contested time limitations on the availability of General Assistance benefits for disabled adults. In *Garcia,* this Court evaluated the constitutionality of a regulation placing a six-month limitation on General Assistance benefits for temporarily disabled adults. *Id.* at 642, 545 P.2d at 1020. As in the instant case, the Health and Social Services Board created that regulation in response to inadequate legislative funds for the General Assistance

Program. *Id.* We did hold that the Health and Social Services Board had the authority to create regulations restricting the amount, number, or length of time during which General Assistance benefits are available to temporarily disabled individuals. *Id.* However, *Garcia* does not control the instant case because the ADA did not exist at the time of that dispute. The ADA provides statutory restrictions on regulations impacting General Assistance benefits for disabled individuals distinct from any applicable constitutional protections.

10. HSD also relied heavily upon *Howell v. Heim* to bolster its claim of authority to place durational time restrictions on the availability of General Assistance benefits for disabled individuals. 1994 NMSC 103, ¶¶ 9–11, 118 N.M. 500, 504–05, 882 P.2d 541, 545–46 (1994). *Howell* involved both statutory and constitutional challenges to an HSD regulation which placed a twelve-month limitation on General Assistance benefits for disabled individuals. *Howell*, 1994 NMSC 103, 118 N.M. 500, 882 P.2d 541. *Howell* established that HSD had statutory authority to decide how to distribute General Assistance benefits when faced with budgetary constraints, including the authority to place durational limits on the receipt of benefits. *Howell*, 1994 NMSC 103, ¶ 12, 118 N.M. 500, 882 P.2d 541. We also held that the imposition of a twelve-month durational time limit on receipt of General Assistance benefits for disabled individuals did not violate substantive due process, an issue not raised in the instant appeal. *Howell*, 1994 NMSC 103, ¶¶ 13–18, 118 N.M. 500, 882 P.2d 541. However, like *Garcia*, *Howell* does not address how the ADA restricts the regulatory authority of HSD. Therefore, we conclude that New Mexico case law has not resolved whether durational time restrictions on General Assistance benefits for disabled individuals violate Title II of the ADA.

### III.

11. We review the remaining issues raised by HSD to determine whether there are material questions of fact which render summary judgment an improper method by which to dispose of this appeal. Summary judgment is an extreme remedy not favored by this Court. *See Pharmaseal Labs., Inc. v. Goffe*, 90 N.M. 753, 756, 568 P.2d 589, 592 (1977). In assessing a grant of summary judgment, this Court must evaluate the "undisputed facts and determine whether, under those facts, summary judgment was proper as a matter of law." *See Fleming v. Phelps–Dodge Corp.*, 83 N.M. 715, 716, 496 P.2d 1111, 1112 (Ct.App.1972). Making all inferences in favor of the non-movant, we interpret the material facts in favor of requiring a trial on the merits. *See Pharmaseal*, 90 N.M. at 756, 568 P.2d at 592. Where there is a question as to any issue of material fact, summary judgment is inappropriate. *Id.*

### A.

12. First we must determine whether there is a question of material fact as to Plaintiffs' qualifications as individuals protected by Title II. *See State ex rel. Children v. In Matter of John D.*, 1997 NMCA 019, ¶ 21, 123 N.M. 114, 934 P.2d 308, 314 (Ct. App.1997) (violation of Section 12132 of the ADA requires proof that plaintiff is disabled under ADA). Title II of the ADA prohibits the exclusion of disabled individuals from receiving benefits or participating in programs on the basis of disability. *See* Section 12132. Plaintiffs of a Title II claim bear the burden of showing that they are qualified individuals with disabilities. *See Tyler*, 857 F.Supp. at 817.

13. Section 12102 of the ADA identifies three categories of individuals with disabilities:

(A) [those with] a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) [those with] a record of such an impairment; or

(C) [those] regarded as having such an impairment.

42 U.S.C. § 12102(2) (1990). We determine that Plaintiffs are qualified individuals with disabilities under category C. Guidance in reaching this determination appears at 42 U.S.C. § 12131 (1990), which provides that a qualified individual with a disability is one

who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." A person qualifies as disabled if they have a "significant restriction in ... 'ability to perform either a class of jobs or a broad range of jobs in various classes....'" *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir.1994) (citing 29 C.F.R. § 1630.2(j)(3)(i)). Although not provided for explicitly in the ADA, the ability to work is a major life activity. *See Garza v. Abbott Labs.*, 940 F.Supp. 1227, 1235 (N.D.Ill. 1996) (quoting 29 C.F.R. § 1630.2(i)).

14. Without resolving whether Plaintiffs fall within categories (A) or (B), as a matter of law all of the Plaintiffs are qualified individuals with disabilities under category (C) of Section 12102(2). A disabled individual, according to HSD, is one who "because of an impairment ... [and] a variety of social factors ... does not have the capacity for employment." 8 NMAC 3.424.24 (1995). It is undisputed that HSD has provided Plaintiffs with General Assistance benefits on the basis that each Plaintiff is incapable of performing the major life activity of employment. Thus, Plaintiffs are regarded by HSD as having an impairment that substantially limits a major life activity, which qualifies them as disabled under category (C) of the ADA's definition of disability. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727–28 (5th Cir.1995) (finding no evidence that Plaintiff was regarded as having impairment substantially limiting major life activity as required under the ADA).

### B.

■ 15. Next we must determine whether, as a matter of law, HSD is a public entity under the ADA. *See Tyler*, 857 F.Supp. at 817 (requiring plaintiff to establish that benefits denied were those of public entity's programs). Title II of the ADA was designed to protect disabled individuals from discriminatory acts of state and local government. *See John D.*, 1997 NMCA 019, ¶ 15, 123 N.M. 114, 934 P.2d 308. Section 12132 of the ADA, which prohibits the denial of benefits on the basis of disability, applies when a state has a "statutory duty ... to assist a

person." *See John D.*, 1997 NMCA 019, ¶ 17, 123 N.M. 114, 934 P.2d 308. Title II's definition of a public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government...." Section 12131(1)(B). HSD is a government agency with a statutory duty to provide financial assistance to needy individuals and families. *See* § 27–2–7 and 8 NMAC 3.010.21. We conclude that HSD's authority to develop regulations for the administration of the General Assistance Program is circumscribed by the ADA because, as a matter of law, HSD is a public entity governed by that Act. *See e.g., John Does 1–5 v. Chandler*, 83 F.3d 1150, 1153–54 (9th Cir.1996) (concluding that Hawaii's Department of Human Services was a public entity under the ADA).

### C.

■ 16. We turn now to evaluate whether, as a matter of law, FAP–419 denied Plaintiffs the benefits of HSD's General Assistance Program on the basis of their disabilities. *See Tyler*, 857 F.Supp. at 817 (requiring plaintiff to establish that public entity denied benefits by reason of disability). The ADA does not permit segregation of individuals with disabilities in the provision of public services, nor does it permit the provision of benefits to individuals with disabilities different from those provided to other benefits recipients. *See Helen L. v. DiDario*, 46 F.3d 325, 335 (3rd Cir.1995).

17. The undisputed facts in this case establish that disabled individuals are ineligible for General Assistance benefits after twelve months of receipt, while other recipients of General Assistance benefits are eligible to receive such benefits for an indefinite period of time. *See* 8 NMAC 3.419.22. Thus, there is no factual dispute as to whether Plaintiffs are denied General Assistance benefits equivalent to those available to General Assistance recipients who are not disabled.

■ 18. HSD denies that the disparity in benefits available to disabled and non-disabled General Assistance recipients is the result of discrimination on the basis of disability. According to HSD, FAP–419 does

not deny Plaintiffs General Assistance benefits on the basis of their disabilities because the General Assistance Program is a compilation of three distinct programs: one for dependent children; one for disabled adults ineligible for SSI; and one for other people ineligible for any federal assistance programs. HSD goes on to argue that the program serving the needs of disabled individuals can be altered without consideration of the restrictions, or lack of restrictions, placed on the program serving dependent children. Such modifications do not violate the ADA because the ADA does not require different programs to provide equivalent benefits. HSD supports its argument by pointing to the recent Ninth Circuit Court of Appeals decision, *John Does 1–5 v. Chandler*, 83 F.3d 1150 (9th Cir.1996), in which durational time restrictions placed on General Assistance benefits for disabled individuals were upheld. We conclude that *Chandler* is inapplicable to the instant case.

■ 19. In *Chandler*, the Ninth Circuit Court of Appeals evaluated whether Hawaii's General Assistance Program violated the ADA by placing a twelve-month durational time restriction on the availability of benefits for disabled individuals, without placing similar restrictions on the availability of benefits for other recipients of General Assistance. *See Id.* at 1152–55. The Court found that Hawaii's Department of Human Services was a state agency as defined in the ADA. *Id.* at 1152–53. Further, the plaintiffs were qualified individuals with disabilities as defined by the ADA by reason of their eligibility for receipt of General Assistance benefits. *Id.* at 1153. The Court went on to note that the General Assistance program was not a cohesive program serving a single needy population; rather it was two programs under the umbrella heading of General Assistance. *Id.* at 1155. The Court concluded that the ADA restricted the regulation-making authority of the Department of Human Services, but that the ADA did not require distinct programs to offer identical benefits to recipients. *Id.* By treating the two components of General Assistance as separate programs, the Court concluded that neither program discriminated against disabled individuals on the ba-

sis of disability in violation of the ADA, and upheld the General Assistance program. *Id.*

20. Unlike the Hawaii General Assistance Program, New Mexico's General Assistance Program is a unified program of assistance. If this Court were to adopt HSD's characterization of the General Assistance Program as a compilation of three distinct programs, we would fail in our duty to give effect to the intent of the Legislature. *See State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). Legislative intent is derived through evaluation of the statutory language as well as the history of the law. *Id.* We read all parts of an act together to produce a harmonious whole. *See Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 485, 650 P.2d 3, 7 (Ct.App.1982). The objective motivating legislation is also relevant to determining legislative intent. *Id.*

21. In the instant case, a single purpose motivated development of the General Assistance Program. The Program was intended to provide assistance to needy people not covered by federal assistance programs. *See* 8 NMAC 3.010.21. Further, the statute governing the General Assistance Program, and the accompanying regulations, refer to a single General Assistance program rather than a compilation of several programs. *See, e.g.*, § 27-2-7 (referring to a general assistance program); 8 NMAC 3.010.21 (identifying General Assistance as "a limited program"). Finally, HSD requests, and the Legislature provides, funding for the General Assistance Program as a single item in the State's budget. In order to give effect to our Legislature's intent, we conclude that the General Assistance Program is a single program of public benefits. While the ADA does not require equivalent benefits in different programs, *see Chandler*, 83 F.3d at 1155, we understand the law to require equivalent benefits for disabled and non-disabled recipients of a single program. Therefore, we cannot adopt the result of *Chandler* in evaluating whether FAP–419 violates Title II of the ADA.

22. In the instant case, there are undisputed facts establishing that the restrictions placed on benefits for Plaintiffs is by reason

of their disabilities. *See Tyler*, 857 F.Supp. at 817. The regulation explicitly provides that disability is the criterion used to distinguish between recipients of General Assistance benefits who are restricted by the twelve-month time limitation and those who are not restricted by the time limitation. *See* 8 NMAC 3.419. We conclude that the use of disability as the determinative factor in limiting eligibility for General Assistance benefits is the denial of the benefits of a public entity by reason of an individual's disability in violation of Title II of the ADA.

### IV.

23. We hold that Plaintiffs are qualified individuals with disabilities under the ADA, and that HSD is a public entity obligated to conform to the restrictions imposed by the ADA. FAP–419 denies disabled individuals General Assistance benefits by reason of their disability in violation of Title II of the ADA. Therefore, we affirm the district court Order granting summary judgment in favor of Plaintiffs and invalidating FAP–419.

24. **IT IS SO ORDERED.**

FRANCHINI, C.J., and MINZNER, J., concur.