Joshua D. HUSTON, Relator,

v.

**COMMISSIONER OF EMPLOYMENT AND ECONOMIC DEVELOPMENT,** Respondent.

No. A03–175.

Court of Appeals of Minnesota.

Dec. 23, 2003.

William E. Dane, University Student Legal Service, Minneapolis, MN, for relator.

Lee B. Nelson, M. Kate Chaffee, St. Paul, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; MINGE, Judge; and CRIPPEN, Judge.*

## OPINION

MINGE, Judge.

Relator, who is hearing impaired, claims that Minn.Stat. § 268.085, subd. 4(c) (2002), which declares that persons who file for or receive Social Security disability benefits are ineligible for unemployment

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

benefits, violates the Americans with Disabilities Act. Because relator's physical condition automatically qualified him for Social Security benefits without having to further establish an inability to work, because the Americans with Disabilities Act prohibits state discrimination against persons based on disability unrelated to workplace requirements, and because the Commissioner of Economic Security denied benefits solely because of the irrebuttable statutory presumption in the Minnesota law, we hold Minn.Stat. § 268.085, subd. 4(c) invalid as applied to relator and others similarly situated, and reverse and remand.

## FACTS

Relator Joshua Huston, a hearing-impaired individual, was laid off from work in April 2001. Huston began receiving unemployment compensation benefits starting May 19, 2001. Subsequently, Huston established a Temporary Extended Unemployment Compensation account and received benefits. On February 26, 2002, as his unemployment benefits were ending, Huston applied for Social Security disability (SSDI) benefits through the Social Security Administration (SSA). In May 2002, the SSA informed Huston that he was entitled to receive SSDI benefits retroactively for the period of October 2001 through April 2002.

Huston received notices from respondent Department of Economic Security (DES) informing him that he had been determined retroactively ineligible for unemployment benefits because of his receipt of SSDI benefits. The notices informed Huston that he had been overpaid the entire amount received, which totaled $15,552. The unemployment law judge affirmed the DES determination of ineligibility but reduced the amount of unemployment compensation overpaid to $7,012

because part of the unemployment benefits were paid for a period prior to the SSDI benefits. The commissioner's representative affirmed the decision of the unemployment law judge.

Huston brings a writ of certiorari to review the commissioner's decision, claiming that it violates both Title II of the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA). The commissioner moved to strike the section of relator's reply brief that raised the MHRA for the first time in this appeal.

## ISSUES

1.  Does Minn.Stat. § 268.085, subd. 4(c) (2002), as applied to relator, violate Title II of the Americans with Disabilities Act?

2.  Is the issue of whether Minn.Stat. § 268.085, subd. 4(c) (2002), violates the Minnesota Human Rights Act properly before the Court of Appeals?

## ANALYSIS

This court uses a relatively narrow standard of review in unemployment cases. *Nerby v. Talent Partners*, 518 N.W.2d 633, 635 (Minn.App.1994). The commissioner's findings of fact are viewed in the light most favorable to the decision and will not be disturbed if there is evidence that reasonably tends to support them. *Markel v. City of Circle Pines*, 479 N.W.2d 382, 383–84 (Minn.1992). We exercise independent judgment with respect to questions of law. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989). The ultimate determination of whether an individual is disqualified from receipt of unemployment benefits is a question of law, which we review de novo. *Id.*

## I.

The purpose of Minnesota's unemployment compensation system is to address the economic insecurity of workers who are involuntarily unemployed through no fault of their own. Minn.Stat. § 268.03 (2002). The relevant provisions define the relationship between unemployment and Social Security benefits as follows:

### 268.085 ELIGIBILITY REQUIRE-MENTS.

Subd. 4. **Social security benefits.**

\* \* \*

(b) There shall be deducted from an applicant's weekly unemployment benefit amount 50 percent of the weekly equivalent of the primary social security old age or disability benefit the applicant has received, has filed for, or intends to file for, with respect to that week.

(c) Regardless of paragraph (b), an applicant shall be ineligible for unemployment benefits for any week with respect to which the applicant is receiving, has received, or has filed for primary social security disability benefits. This paragraph shall not apply if the Social Security Administration approved the collecting of primary social security disability benefits each month the applicant was employed during the base period.

\* \* \*

(e) Any applicant who receives primary social security old age or disability benefits for periods that the applicant has been paid unemployment benefits shall be considered overpaid those unemployment benefits under section 268.18, subdivision 1.

Minn.Stat. § 268.085, subd. 4. We note paragraph (b) provides that individuals who receive, file for, or intend to file for Social Security old age or disability benefits are eligible for unemployment benefits, but with a 50% offset. This offsetting provision originally only applied to recipients age 62 or older. *See* 1998 Minn. Laws ch. 265, § 24. Eventually, the language was changed to apply to workers under 62 years of age and apparently created a prohibition on full receipt of both disability and employment benefits. *See* 2000 Minn. Laws ch. 488, § 17. But now, under paragraph (c), if an individual files for or receives SSDI benefits, that person becomes automatically ineligible to receive any state unemployment benefits, unless the individual received the SSDI while working. Apparently, the rationale for the prohibition in Minnesota's unemployment benefit law on paying benefits to persons seeking SSDI is that by reason of their physical condition, such persons are unable to work and as such are automatically disqualified from receipt of unemployment benefits.

The SSDI program, 42 U.S.C. § 423 (2002), and the ADA, 42 U.S.C. §§ 12201–12213 (2002), both address individuals with disabilities, but in different ways. The SSA, for the purposes of disability benefits, defines disability as

the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment(s), that makes you unable to do your past relevant work ... or any other substantial gainful work which exists in the national economy.

20 C.F.R. § 404.1505 (2002).

■ Despite this definition of disability, the SSDI program is administered so that eligibility for benefits does not automatically mean that an individual is unable to work. The SSA engages in a five-step

inquiry that embodies its definition of disability. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804, 119 S.Ct. 1597, 1602–03, 143 L.Ed.2d 966 (1999). First, the administration asks whether the applicant is working. *Id.* at 804, 119 S.Ct. at 1602. The second step is to determine whether the applicant has a "severe impairment" that presents significant limitations to the applicant's ability to do basic work activities. *Id.* Third, if the applicant's impairment is found on the administration's list of impairments, the applicant is automatically eligible for SSDI benefits without further inquiry into work ability. *Id.* Thus, step three conclusively presumes, without further inquiry, that individuals who have an impairment identified by the SSA are unable to work. *Id.* If an applicant does not possess an impairment found in step three, then steps four and five inquire into whether the applicant is able to perform "past relevant work" and, if not, whether the applicant is able to perform other jobs that "exist in significant numbers in the national economy." *Id.*, 119 S.Ct. at 1603.

■ Turning to the ADA, the relevant statutory provisions state that its purpose is to eliminate unwarranted discrimination against individuals with disabilities in order to guarantee those individuals equal opportunity. 42 U.S.C. § 12101(a)(8), (b)(1) (2002). Title II of the ADA prohibits state and local governments from denying qualified individuals with a disability the benefits and programs of the state. 42 U.S.C. § 12132 (2002). The ADA defines a "qualified individual with a disability" as one who "with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (2002). State law is limited or invalid to

the extent it conflicts with the ADA. *See, e.g., Weaver v. N.M. Human Serv. Dep't*, 123 N.M. 705, 945 P.2d 70, 76 (1997) (holding that a New Mexico administrative regulation was invalid because it limited the time in which individuals with disabilities could receive general assistance benefits and violated Title II of the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052–1055 (9th Cir.2002) (holding that Hawaii state regulations violated the ADA because the regulations excluded otherwise qualified disabled individuals from the state healthcare program).

■ Despite his hearing impairment, DES originally determined that relator was ready and able to work, thus making him eligible for receipt of Minnesota unemployment compensation benefits. Under Minnesota law, the only relevant factor that deemed relator retrospectively ineligible for unemployment compensation was his filing for SSDI benefits. But, filing for SSDI benefits does not require a statement by relator that he is unable to work. In fact, the United States Supreme Court has recognized that the SSA sometimes grants SSDI benefits to individuals who do work. *See Cleveland*, 526 U.S. at 805, 119 S.Ct. at 1603. Here, the SSA *presumed* that relator was unable to work by virtue of his impairment without any inquiry into his actual work ability. Thus, relator's ineligibility for unemployment compensation benefits was based on filing for a federal disability benefit where a determination as to his ability to work is not required. Minn.Stat. § 268.085, subd. 4(c) creates an irrebuttable presumption that individuals who file for or receive SSDI benefits are unable to work. Without an opportunity to rebut that presumption, the Minnesota law effectively discriminates against disabled individuals who file for or receive SSDI benefits but are also able to work.

We conclude that Minn.Stat. § 268.085, subd. 4(c), violates section 12132 of Title II of the ADA by denying a qualified individual with a disability the benefits and programs of this state. Under the Supremacy Clause of U.S. Const. art. VI, cl. 2, we further conclude that Minn.Stat. § 268.085, subd. 4(c) is invalid as applied to disabled individuals who file for or receive SSDI benefits based on a categorical impairment where the SSA undertakes no assessment of the applicant's actual ability and availability to work. We recognize that application for or receipt of SSDI benefits normally represents a determination, first by the applicant and ultimately by the SSA, that the applicant is not able to work and is out of the job market. In administering the unemployment compensation program, the state of Minnesota may legitimately use the federal SSDI program as a reference for simplifying determinations of who is attached to the job market. But, the statute goes too far in making the presumption irrebuttable. The applicant for unemployment benefits should be able to make his case. Thus, in this situation, Huston would have the burden of going forward to establish that his SSDI determination did not cover the question as to his ability to work. If this burden is met, Huston admits that he would be subject to the offset requirements in Minn.Stat. § 268.085, subd. 4(b). This permits Huston to establish that the SSDI program provided benefits despite his ability to work just as Minn.Stat. § 268.085, subd. 4(c) presently allows workers who received SSDI benefits while working to collect unemployment benefits after they lose their job. Further, Huston would be subject to

the overpayment provisions of Minn.Stat. § 268.085, subd. 4(e), to the extent he received unemployment compensation benefits beyond that to which he was entitled.[1] We note, however, that individuals seeking eligibility for unemployment compensation benefits must be able and available to work. Therefore, this holding does not extend to disabled individuals who file for or receive SSDI benefits and have been determined unable to work by the SSA by means of the factual findings embodied in steps four and five of the SSDI eligibility inquiry.

In reaching this conclusion, we note that it is difficult to work through Minn.Stat. § 268.085, subd. 4. The interrelationship between the paragraphs is awkward and the legislative changes in recent years suggest complexities that we have not discussed. The parties have neither briefed nor argued these matters and the commissioner's representative did not address them in his decision. We will not gratuitously extend our analysis to matters not necessary to decide the case before us. It appears this matter needs legislative attention.

Alternatively, the state argues that even if Minn.Stat. § 268.085, subd. 4(c), violates Title II of the ADA, this court is barred from considering relator's claim under *Alsbrook v. City of Maumelle,* 184 F.3d 999 (8th Cir.1999). The state's reliance on *Alsbrook* is misplaced. In *Alsbrook,* the plaintiff sued state employees in their individual and official capacities under Title II of the ADA. *Id.* at 1002. The state is correct to the extent the Eighth Circuit held that Congress did not properly exer-

---

1. Neither party argues that Minn.Stat. § 268.085, subd. 4(e) is an independent basis for denial of unemployment benefits to SSDI recipients. We read paragraph 4(e) as only making clear that unemployment benefits are to be recovered under section 268.18, subd. 1,

if those benefits should not otherwise have been paid. Thus, we do not consider § 268.085, subd. 4(e), in and of itself, to be an independent basis for the state to recover benefits from a recipient who otherwise qualifies for benefits.

cise § 5 powers under the Fourteenth Amendment of the U.S. Constitution when it purported to abrogate state sovereign immunity against claims brought under Title II of the ADA. *Id.* at 1010. However, subsequent Eighth Circuit cases have questioned the vitality of *Alsbrook* and limited its holding to barring suits against government officials in their *individual* capacities. *See Randolph v. Rodgers,* 253 F.3d 342, 346 (8th Cir.2001) (stating that *Alsbrook* bars § 1983 actions against state officials in their individual capacities); *Gibson v. Ark. Dep't of Correction,* 265 F.3d 718 (8th Cir.2001) (holding that state officials may be sued for injunctive relief under the ADA).

Unlike Huston, the plaintiff in *Alsbrook* sued the state for compensatory and punitive damages. *Alsbrook,* 184 F.3d at 1003. Huston is not bringing the state into court. He is not seeking an award against the state. Instead, he is relying on the ADA as a defense against a state initiated claim that he was disqualified from receiving unemployment benefits and that he should repay an overpayment. Therefore, we conclude that the *Alsbrook* interpretation of the Eleventh Amendment does not control the instant case and Huston is not barred from asserting his ADA defense.

## II.

The next issue is whether this court may consider a claim asserted for the first time in Huston's reply brief. The claim is that DES's action constitutes disability discrimination under the MHRA. Minn.Stat. § 363.03, subd. 4 (2002). The commissioner's motion to strike this claim is before this panel. Under the Minnesota Rules of Civil Appellate Procedure, a reply brief by the appellant "must be confined to new matter raised in the brief of the respondent." Minn. R. Civ.App. P. 128.02, subd. 3. When a new issue is raised in the

reply brief, that portion of the brief should be stricken. *Reserve Life Ins. Co. v. Comm'r of Commerce,* 402 N.W.2d 631, 634 (Minn.App.1987), *review denied* (Minn. May 20, 1987). Neither Huston's nor the commissioner's brief contain any reference to a claim under the MHRA. We hold that section I.B of Huston's reply brief should be stricken as it raises a new matter outside the confines of the commissioner's brief.

## DECISION

Minn.Stat. § 268.085, subd. 4(c), is invalid under Title II of the ADA as applied to individuals who are disabled, filing for or receiving SSDI benefits, and are not given an opportunity to rebut the presumption that they are unable to work. We also strike section I.B of relator's reply brief. We reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded; motion granted.**