*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1939**

Troy K. Scheffler,
Appellant,

vs.

Minnesota Department of Human Services,
Respondent,

Anoka County,
Respondent.

**Filed July 27, 2015
Affirmed
Schellhas, Judge**

Anoka County District Court
File No. 02-CV-13-4057

Peter J. Nickitas, Peter J. Nickitas Law Office, LLC, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Anne Fuchs, Assistant Attorney General, St. Paul, Minnesota (for respondent Department of Human Services)

Anthony C. Palumbo, Anoka County Attorney, Andrew T. Jackola, Assistant County Attorney, Anoka, Minnesota (for respondent Anoka County)

Considered and decided by Bjorkman, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

**SCHELLHAS**, Judge

Appellant challenges the termination of his MinnesotaCare medical coverage following his receipt of Social Security Disability Insurance (SSDI) payments and resulting eligibility for Medicare coverage. Because the district court did not err by granting summary judgment for respondents, we affirm.

## FACTS

Appellant Troy K. Scheffler suffers from agoraphobia with panic disorder. While receiving medical coverage through MinnesotaCare, Scheffler began to receive SSDI payments. Due to his receipt of SSDI payments, Scheffler became eligible for medical coverage through Medicare and was enrolled automatically in Medicare. Consequently, Scheffler became ineligible for coverage through MinnesotaCare under federal and state law. Respondent Anoka County (the county), acting on behalf of respondent Minnesota Department of Human Services (the department), therefore terminated Scheffler's MinnesotaCare coverage. Scheffler's premiums and out-of-pocket medical costs increased through Medicare, and he enrolled in Medical Assistance for Employed Persons with Disabilities (MAEPD) to mitigate the cost increase. But the medical costs for which Scheffler is now responsible are still higher than when he was enrolled in MinnesotaCare. Additionally, he must earn more than $65 per month to remain eligible for MAEPD.

Scheffler challenged the termination of his MinnesotaCare coverage before a human services judge (HSJ), arguing that his ineligibility for MinnesotaCare is due to his

disability and therefore constitutes discrimination. The HSJ recommended that the Minnesota Commissioner of Human Services (the commissioner) affirm the termination of Scheffler's MinnesotaCare coverage, concluding that no dispute existed about Scheffler's eligibility for Medicare and consequent ineligibility for MinnesotaCare. The commissioner adopted the HSJ's recommendation and explained that the HSJ "does not have authority to make [a] ruling on constitutional issues, or alleged discrimination of law."

Scheffler appealed the commissioner's decision to district court and moved for summary judgment. Two weeks before the summary-judgment hearing, the county filed a memorandum opposing Scheffler's motion and requesting that summary judgment be granted in the county's favor. The court determined that Scheffler did not establish a prima facie case of disability discrimination and was not requesting a reasonable accommodation. The court affirmed the commissioner's decision and granted summary judgment to the county.

This appeal follows.

## DECISION

### I.

Scheffler argues that the grant of summary judgment to the county must be reversed because the county filed, and served by mail, its request for summary judgment

3

only 14 days before the summary-judgment hearing.[1] "No [dispositive] motion shall be heard until the moving party . . . serves the [specified] documents on all opposing counsel and self-represented litigants and files the documents with the court administrator at least 28 days prior to the hearing . . . ." Minn. R. Gen. Pract. 115.03(a); *see also* Minn. R. Civ. P. 56.03 (stating that "[s]ervice and filing of [a summary-judgment] motion shall comply with the requirements of Rule 115.03 of the General Rules of Practice for the District Courts, provided that in no event shall the motion be served less than ten days before the time fixed for the hearing").

The district court had discretion to modify the time limit in the general rules. *See* Minn. R. Gen. Pract. 115.01(b) ("The time limits in this rule are to provide the court adequate opportunity to prepare for and promptly rule on matters, and the court may modify the time limits, provided, however, that in no event shall the time limited be less than the time established by Minn. R. Civ. P. 56.03."); Minn. R. Gen. Pract. 115.07 (stating that "if the interests of justice . . . require, the court may waive or modify the time limits established by this rule"); *Pfeiffer v. Allina Health Sys.*, 851 N.W.2d 626, 636 n.7 (Minn. App. 2014) (stating that the general rules of practice "may be relaxed or modified in furtherance of justice," and enforcement of local rules "is left to the discretion of the district court" (quotation omitted)), *review denied* (Minn. Oct. 14, 2014).

Additionally, upon consideration of Scheffler's summary-judgment motion, the district court had authority to enter summary judgment in favor of the county, which the

---

[1] The county included its request for summary judgment in a memorandum that it filed with the court, along with an attorney's affidavit, in response to Scheffler's motion for summary judgment.

4

county sought in response to Scheffler's summary-judgment motion. "Judgement shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We conclude that the district court did not err by granting summary judgment for the county even though the county did not adhere strictly to the time requirements of Minn. R. Gen. Pract. 115.03(a). *See Benigni v. Cnty. of St. Louis*, 585 N.W.2d 51, 53−54 (Minn. 1998) (upholding summary judgment although motion was served by mail 12 days before hearing); *see also Wikert v. N. Sand and Gravel, Inc.*, 402 N.W.2d 178, 182−83 (Minn. App.1987) (upholding summary judgment although motion was served by mail eight days before hearing when no material facts were in dispute, judgment and opposing party was not prejudiced), *review denied* (Minn. May 18, 1987).

## II.

A district court must grant summary judgment if, based on the entire record before the court, there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. An appellate court reviews a grant of summary judgment de novo to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). The application of statutes to undisputed facts is a legal conclusion that is reviewed de novo. *Anderson v. Christopherson*, 816 N.W.2d 626, 630 (Minn. 2012).

MinnesotaCare was "established to promote access to appropriate health care services" for "eligible persons." Minn. Stat. § 256L.02, subds. 1, 2 (2014). To be eligible for MinnesotaCare, an "individual must not have minimum essential health coverage," and "an applicant or enrollee who is entitled to Medicare Part A or enrolled in Medicare Part B coverage . . . is considered to have minimum essential health coverage." Minn. Stat. § 256L.07, subd. 3 (2014). "An applicant or enrollee who is entitled to premium-free Medicare Part A may not refuse to apply for or enroll in Medicare coverage to establish eligibility for MinnesotaCare." *Id.*, subd. 3(b). Scheffler concedes that he is entitled to "minimum essential health coverage" through Medicare and is therefore ineligible for medical coverage through MinnesotaCare under the language of section 256L.07, subdivision 3. But he argues that the denial of coverage through MinnesotaCare constitutes disability discrimination because he is eligible for Medicare due to his disability and receipt of SSDI payments.

*No prima facie case of disability discrimination*

Scheffler argues that he has been subjected to disability discrimination in violation of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Minnesota Human Rights Act (MHRA). Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012). Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied

6

the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2012). And under the MHRA:

> It is an unfair discriminatory practice to discriminate against any person in the access to, admission to, full utilization of or benefit from any public service because of . . . disability . . . or to fail to ensure physical and program access for disabled persons unless the public service can demonstrate that providing the access would impose an undue hardship on its operation.

Minn. Stat. § 363A.12, subd. 1 (2014).

To make a prima facie case of disability discrimination, "a plaintiff must show: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (applying test to claim of disability discrimination in violation of ADA and Rehabilitation Act); *see Sonkowsky ex rel. Sonkowsky v. Bd. of Educ.*, 327 F.3d 675, 678 (8th Cir. 2003) (applying test to claim of disability discrimination in violation of MHRA); *see also Somers v. City of Minneapolis*, 245 F.3d 782, 788 (8th Cir. 2001) ("Claims under the MHRA are analyzed the same as claims under the ADA."); *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998) (stating that "[t]he rights, procedures, and enforcement remedies" under ADA are same as under Rehabilitation Act). Summary judgment is appropriate if a plaintiff fails to establish any element of a prima facie case of disability discrimination. *Treanor v. MCI Telecomms. Corp.*, 200 F.3d 570, 574 (8th Cir. 2000).

The parties do not dispute that Scheffler is a person with a disability; they dispute whether Scheffler is otherwise qualified for MinnesotaCare coverage and whether he has

been excluded from MinnesotaCare due to discrimination based upon disability. The ADA's "term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (2012); *see also Falcone v. Univ. of Minn.*, 388 F.3d 656, 659 (8th Cir. 2004) (stating that "otherwise qualified [individual]" under language of Rehabilitation Act is "one who is able to meet all of a program's requirements in spite of his handicap" (quotation omitted)).

Scheffler appears to argue that a lack of "minimum essential health coverage" should not be regarded as an "essential eligibility requirement" for MinnesotaCare coverage. But a purpose of MinnesotaCare is to provide medical coverage to people who do not otherwise have coverage available. *See* Minn. Stat. §§ 256L.02, subds. 1, 2, .07, subds. 2, 3 (2014). The requirement that a recipient of MinnesotaCare coverage lack "minimum essential health coverage," *see* Minn. Stat. § 256L.07, subd. 3, is essential to the fulfillment of this purpose. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 158 (2d Cir. 2013) (stating that "essential eligibility requirements are those requirements without which the nature of the program would be fundamentally altered" (quotations omitted)).

Scheffler does not meet this essential eligibility requirement of MinnesotaCare because he is eligible for and enrolled in Medicare, which constitutes "minimum essential health coverage." *See* Minn. Stat. § 256L.07, subd. 3(b). Scheffler is disqualified from

8

MinnesotaCare due to his Medicare coverage, not due to discrimination based upon disability. Anyone who has minimum essential health coverage, whether due to disability or otherwise, is disqualified from MinnesotaCare. Scheffler is being treated the same as others who have minimum essential health coverage and are thus ineligible for MinnesotaCare. *Cf. DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1105 (8th Cir. 1997) (stating that school policy limiting the administration of prescription medication to students did not discriminate based on disability because "[t]he policy is neutral; it applies to all students regardless of disability").

Scheffler compares his case to *Huston v. Comm'r of Emp't & Econ. Dev.*, in which we invalidated under the ADA a statutory provision disqualifying unemployed applicants and recipients of SSDI payments from the receipt of unemployment benefits unless they received SSDI payments while employed. 672 N.W.2d 606, 609, 611 (Minn. App. 2003), *review dismissed* (Minn. May 25, 2004). The provision created an irrebuttable statutory presumption that unemployed SSDI applicants and recipients are unable to work and therefore are unqualified to receive unemployment benefits. *Id.* at 609. We determined that "[w]ithout an opportunity to rebut that [statutory] presumption, the Minnesota law effectively discriminates against disabled individuals who file for or receive SSDI benefits but are also able to work." *Id.* at 609–11 (noting that application for and even receipt of SSDI payments does not necessarily mean that individual is unable to work). We stated that an "applicant for unemployment benefits should be able to make his case" that he is able to work. *Id.* at 611.

9

Scheffler suggests that his ineligibility for MinnesotaCare due to his receipt of SSDI payments is comparable to the automatic ineligibility for unemployment benefits due to receipt of SSDI payments that was invalidated in *Huston*. But the disability discrimination at issue in *Huston* was the irrebuttable statutory presumption that an SSDI recipient is unable to work. In this case, no presumption based on disability is at issue. The statutory scheme that Scheffler challenges disqualifies anyone with minimum essential health coverage from MinnesotaCare coverage, regardless of the reason for entitlement to other medical coverage. We therefore conclude that the district court did not err by granting summary judgment on the ground that Scheffler did not establish a prima facie case of disability discrimination by showing that he has otherwise qualified for MinnesotaCare coverage and that he was excluded from MinnesotaCare due to discrimination based upon disability.

*A reasonable accommodation*

Even if Scheffler could establish a prima facie case of discrimination, his claim of disability discrimination would fail because he is not requesting a reasonable accommodation for his disability. As an affirmative defense to a claim of disability discrimination, "a defendant may demonstrate that [a] requested accommodation would constitute an undue burden." *Randolph*, 170 F.3d at 858; *see also* 28 C.F.R. § 35.130(b)(7) (2014) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.");

10

Minn. Stat. § 363A.12, subd. 1 (stating that discrimination on the basis of disability in providing access to a public service does not constitute an unfair discriminatory practice if "the public service can demonstrate that providing the access would impose an undue hardship on its operation"). "There is no precise reasonableness test, but an accommodation is unreasonable if it either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program." *DeBord*, 126 F.3d at 1106; *see also Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994) ("Reasonable accommodations do not require an institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." (quotation omitted)).

Scheffler requests "an equivalent, equitable substitute for the medical care benefits he enjoyed" under MinnesotaCare and contends that this can be accomplished by "placement of the state as a secondary insurer behind Medicare." But this proposed accommodation would fundamentally alter the nature of MinnesotaCare and impose a financial burden by making the state responsible for the costs not covered under Medicare. The accommodation would necessitate waiver of the essential eligibility requirement that a recipient of MinnesotaCare coverage lack minimum essential health coverage. *See Pottgen*, 40 F.3d at 930 ("Waiving an essential eligibility standard would constitute a fundamental alteration in the nature of the . . . program."). We conclude that the district court did not err by granting summary judgment on the ground that the accommodation that Scheffler requests is unreasonable and would constitute an undue burden.

11

*Discrimination based on receipt of public assistance*

Scheffler also contends that the termination of his MinnesotaCare coverage constitutes discrimination based on the receipt of public assistance in violation of the MHRA. Under the MHRA, "[i]t is an unfair discriminatory practice to discriminate against any person in the access to, admission to, full utilization of or benefit from any public service because of . . . status with regard to public assistance." Minn. Stat. § 363A.12, subd. 1; *see also* Minn. Stat. § 363A.03, subd. 47 (2014) (defining "status with regard to public assistance" to include "the condition of being a recipient of federal, state, or local assistance, including medical assistance" (quotation marks omitted)). Scheffler argues that his disqualification from medical coverage through MinnesotaCare due to his receipt of medical coverage through Medicare is discriminatory. His argument that he must be permitted to be enrolled simultaneously in two public programs that provide the same type of benefit—medical coverage—lacks legal support and merit.

**Affirmed.**